[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2006
THOMAS K. KAHN
CLERK

No. 05-12105

_____

D. C. Docket No. 03-00977-CV-BBM-1

TEMIDAYO AJAKA,
FEHINTOLA AJAKA,

                         Plaintiffs-Counter-Defendants-Appellants,


                    versus


BROOKSAMERICA MORTGAGE CORPORATION,
RESIDENTIAL FUNDING CORPORATION,

                         Defendants-Counter-Claimants-Appellees,


HOMECOMINGS FINANCIAL NETWORK, INC.,

                         Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(June 29, 2006)**

Before ANDERSON, BARKETT and BOWMAN[*], Circuit Judges.

BARKETT, Circuit Judge:

Temidayo Ajaka sued BrooksAmerica Mortgage Corporation ("BrooksAmerica"), Residential Funding Corporation ("RFC"), and HomeComings Financial Network, Inc. ("HomeComings") — collectively, the "Defendants" — for rescission and damages under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq. The district court granted summary judgment in favor of the defendants because Ajaka failed to timely disclose the TILA claims as contingent assets in his pending Chapter 13 bankruptcy action. Ajaka appeals and we reverse.

## BACKGROUND

On April 14, 2000, Ajaka borrowed $35,000 from BrooksAmerica, secured by a second mortgage on his primary residence. The annual percentage rate for the home equity loan was 19.7483%.[1] Two years later, on August 2, 2002, Ajaka filed a Chapter 13 bankruptcy proceeding in the U.S. Bankruptcy Court for the Northern District of Georgia, Atlanta Division. In re Ajaka, No. 02-97844-mhm (Bankr. N.D. Ga.). There is no dispute that at the time he filed for bankruptcy, he was not

---

[*] Honorable Pasco M. Bowman, II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[1] Because of the high interest rate on the loan, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639, applied.

aware of any potential TILA claim arising out of the loan and the various disclosures appertaining thereto.[2] The Chapter 13 reorganization plan was confirmed on December 7, 2002. Again, there is no dispute that, at the time the plan was confirmed, Ajaka was not aware of his potential TILA claim. Under Chapter 13, a creditor has 180 days to object to confirmation of the reorganization plan on the basis of fraud. See 11 U.S.C. § 1330(a).

On January 3, 2003, Ajaka met for the first time with Charles Baird, his counsel on this appeal. During that meeting, Ajaka was informed, for the first time, that he may have a viable claim under TILA, although it was unclear at that point against whom the claim could be asserted. Baird also told Ajaka that his bankruptcy schedules would have to be amended to reflect the TILA claim. While Baird advised Ajaka that he would need to disclose his TILA claim as an asset in the bankruptcy proceeding, Ajaka testified in his deposition that he had little — if any — knowledge of the "nature and effect" of his TILA claim in January 2003, or against whom he would assert it.

Two weeks later, on January 18, 2003, Baird sent a rescission demand on behalf of Ajaka to BrooksAmerica, the original holder of the note and security

---

[2] Although Ajaka testified in his deposition that he met with legal aid, who advised him of potential irregularities with the loan, before he filed for bankruptcy, no one disputes that he was unaware of his possible TILA claim, and of its possible effect on his bankruptcy, until January 3, 2003, a date the relevance of which we explain shortly.

deed.[3] Pursuant to 15 U.S.C. § 1635(b), BrooksAmerica was required to respond to the demands within twenty days after receipt of the letter, which it did by advising Ajaka on or around February 13, 2003, that it had assigned its interest in the note and security deed to another company. However, the letter did not inform Baird of the name of the entity to whom BrooksAmerica assigned the mortgage. BrooksAmerica also stated that it had provided Ajaka with the proper disclosures under TILA and that Ajaka did not have the right to rescind.

Because the deed records did not show an assignment of the note and security deed, Ajaka claims that Baird was unable to immediately determine the assignee against whom a TILA claim would be asserted. In addition, Ajaka claims that because BrooksAmerica failed to provide him with notice of the assignment, he was never made aware of the assignment or to whom it was assigned. Ajaka claims that in a follow-up communication, Baird requested the name of the assignee from BrooksAmerica, but did not receive an answer.

On or about March 26, 2003, Baird informed Ajaka's bankruptcy attorney that a TILA claim should be listed as a potential asset in the bankruptcy proceeding. Approximately two days later, Baird forwarded a statutory rescission

_____

[3] For loan transactions involving security interests in a debtor's primary residence, the debtor can demand that the creditor rescind the mortgage if certain material disclosures are not made. See 15 U.S.C. § 1635(a). If the creditor does not take steps to do so within twenty days, the debtor can bring suit in federal court to enforce his right of rescission. Id. § 1635(b).

demand letter to RFC, convinced that either HomeComings or RFC had taken assignment of the mortgage. RFC received the letter on April 2, and was required to respond to the demands within twenty days of receipt. On April 11, 2003, Ajaka filed the instant action, alleging a TILA violation by the Defendants.[4]

On April 21, 2003, still within the time period for filing an objection to confirmation of Ajaka's Chapter 13 reorganization plan, RFC, which had not yet been served with the complaint and summons in Ajaka's TILA action, filed a complaint for declaratory judgment and equitable relief as part of the bankruptcy proceeding. RFC alleged that (1) Ajaka's TILA claim was barred by judicial estoppel; (2) Ajaka's TILA claim was without merit; and (3) even if Ajaka had a right to rescind, he should be required to immediately repay the proceeds of the loan, so as to return the parties to the status quo ante.[5] Nonetheless, and in any event, there is no question that, due to RFC's filing, all of the creditors were on notice of the potential TILA claim by April 21, 2003, if not before. As such, all of Ajaka's creditors had more than six weeks from the time they learned of his TILA

---

[4] Under TILA, the general rule is that "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." 15 U.S.C. § 1635(f). As such, Ajaka's right to rescind would have expired on April 14, 2003.

[5] Although the bankruptcy court stayed consideration of RFC's claims pending resolution of this case, it is not at all clear how the bankruptcy court would have the authority to declare that a lawsuit in the district court should be judicially estopped.

claim to the expiration of the 180-day period for objecting to confirmation of his

Chapter 13 reorganization plan and, if they so desired, seeking conversion of

Ajaka's bankruptcy from Chapter 13 to Chapter 7.

On June 20, 2003, after that time period expired, Ajaka filed a formal

amendment to the bankruptcy action that included disclosure of his TILA claim as

a contingent asset. The amendments also reclassified the home equity mortgage

from a secured debt to an unsecured debt, assuming Ajaka was successful on his

TILA claim. After discovery, the Defendants filed their motions for summary

judgment in this case—Ajaka's TILA action—claiming, inter alia, that Ajaka's

TILA claim was barred by judicial estoppel because he failed to disclose it in the

bankruptcy proceeding. The district court granted the motions for summary

judgment on that ground and this timely appeal followed.

## DISCUSSION[6]

Judicial estoppel, also sometimes referred to as "equitable estoppel," is an

---

[6] We review the district court's grant of summary judgment de novo, and the district court's findings of fact for clear error. Nat'l R.R. Passenger Corp. (Amtrak) v. Rountree Transp. & Rigging, Inc., 422 F.3d 1275, 1282 (11th Cir. 2005). Summary judgment is appropriate when "there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (internal citations omitted). We review the district court's application of judicial estoppel for abuse of discretion. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 (11th Cir. 2002). In examining the record, we review the evidence in the light most favorable to the non-moving party—in this case, Ajaka. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004). That is, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version." Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).

6

equitable doctrine invoked at a court's discretion. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). Under this doctrine, a party is precluded from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. [It] is an equitable concept intended to prevent the perversion of the judicial process." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citation and internal quotation marks omitted). Judicial estoppel is intended to be a flexible rule in which courts must "take into account all of the circumstances of each case in making our determination." See Palmer & Cay, Inc. v. Marsh & McLennan Cos., 404 F.3d 1297, 1307 n.17 (11th Cir. 2005).

Although not inflexible or exhaustive, we begin with a consideration of two primary factors in determining whether to apply judicial estoppel. "First, the allegedly inconsistent positions must have been taken under oath in a prior proceeding, and second, they must have been calculated to make a mockery of the judicial system." Id. (internal quotation marks omitted). "These factors are not exhaustive, however . . . ." Id.; Burnes, 291 F.3d at 1285-86 (holding that "courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine"). One "pertinent factor[ is] . . . whether the present position is clearly inconsistent with the earlier position and whether the party successfully persuaded a court to accept the earlier position, so

7

that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled." Id.; see also New Hampshire, 532 U.S. at 751 ("A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.").

There is no question that Ajaka failed to timely amend his Chapter 13 reorganization plan to reflect his contingent TILA claim, and that he therefore "took inconsistent positions . . . under oath in a prior proceeding." A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. §§ 521(1), 541(a)(7). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." Burnes, 291 F.3d at 1286. Because there is no question that Ajaka failed to assert his TILA claim as an asset in the bankruptcy proceeding, the first prong of our judicial estoppel test is satisfied. See id. at 1285 (finding similar failure to disclose in bankruptcy proceeding to satisfy the first factor).

As such, and as the parties recognize, this appeal rises and falls on Ajaka's intent. If Ajaka's failure to timely incorporate the TILA claim into his bankruptcy proceeding was "calculated to make a mockery of the judicial system," then

judicial estoppel should bar him from taking advantage of such capriciousness here.[7]

Although our case law recognizes that there is no <u>requirement</u> that the party invoking judicial estoppel show prejudice, <u>see</u> <u>Burnes</u>, 291 F.3d at 1286, prejudice serves an important role in the applicability of the doctrine in this context, for it is difficult to impute an intent "to make a mockery of the judicial system" where the complaining party was aware of the inconsistency in sufficient time and in a position to properly raise an objection in the <u>original</u> proceeding. Put another way, judicial estoppel is meant to prevent litigants from deliberately changing positions after the fact to gain an unfair advantage.

This case is rather different. As noted above, <u>because of</u> RFC's adversary action in the bankruptcy court, filed in response to Ajaka's rescission demand, all of Ajaka's creditors, including the Defendants, were aware no later than April 21, 2003, that Ajaka had a colorable TILA claim. At that time, nothing would have prevented the Defendants from seeking revocation of the confirmation of Ajaka's Chapter 13 reorganization plan pursuant to 11 U.S.C. § 1330(a), after which the

---

[7] When considering a party's motive and intent and whether it justifies applying judicial estoppel, we require that the intent be "cold manipulation and not an unthinking or confused blunder . . . ." <u>Johnson Serv. Co. v. Transamerica Ins. Co.</u>, 485 F.2d 164, 175 (5th Cir. 1973). "The doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence." <u>Burnes</u>, 291 F.3d at 1286 (citing <u>Am. Nat'l Bank of Jacksonville v. FDIC</u>, 710 F.2d 1528, 1536 (11th Cir. 1983) (explaining that judicial estoppel applies to the "calculated assertion" of divergent positions)).

Defendants could have sought conversion of Ajaka's bankruptcy to Chapter 7. <u>See</u> 11 U.S.C. § 1307(c). That is to say, although Ajaka did not himself amend his bankruptcy schedules to reflect the TILA claim until June 20, after the 180-day period under § 1330(a) had expired, all creditors were already aware of the TILA claim resulting directly from Ajaka's attempts to sue the appropriate parties, and therefore could have challenged Ajaka's failure to previously amend his schedules within the context of the ongoing bankruptcy proceeding.

Our decision in <u>Burnes</u>, on which the Defendants rely, provides a helpful contrast: In <u>Burnes</u>, the debtor filed a Chapter 13 bankruptcy petition six months before he filed a discrimination charge with the EEOC against his employer, which, unlike the situation here, was not a party to his bankruptcy proceeding. Almost one year later, but while his bankruptcy remained pending, the debtor filed an employment discrimination suit against his employer in federal district court. The debtor did not amend his bankruptcy schedules or statement of financial affairs to include his lawsuit. Later, the debtor converted his bankruptcy case from Chapter 13 to Chapter 7. At that time, the debtor filed new, updated schedules, and again failed to include the pending discrimination lawsuit on his amended schedules. Then, the debtor received a "no asset" discharge. Neither the Chapter 7 trustee, nor any of the debtor's creditors, ever <u>knew</u> about the employment

10

discrimination lawsuit. The defendant employer moved for summary judgment in the district court on the basis of judicial estoppel, and the district court granted the motion. We affirmed. We noted that creditors rely on a debtor's disclosure statements in determining whether to contest or consent to a no asset discharge and that Bankruptcy courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge. Accordingly, "the importance of full and honest disclosure cannot be overstated." Burnes, 291 F.3d at 1286.

Here, in contrast, Ajaka's creditors did know, within the time period during which they could seek revocation of the confirmation of Ajaka's Chapter 13 reorganization plan, about Ajaka's potential TILA claim.[8] Also, there is significant evidence in this case that Ajaka did not intend to conceal his TILA claim from his creditors. As noted above, Baird, acting on Ajaka's behalf, informed Ajaka's bankruptcy attorney on March 26, 2003, that the schedules should be amended to reflect the TILA claims; this was before any defendant in this case raised the

---

[8] We note that we find Ajaka's claim that he received no benefit from failing to immediately amend his bankruptcy schedules somewhat unconvincing. Although his TILA rescission claim, if successful, would result in the conversion of his loan from secured debt to unsecured debt, which would likely be a detriment to Ajaka vis-a-vis his bankruptcy estate, Ajaka also asserts claims for several thousand dollars' worth of post-rescission damages that, if successful, would unquestionably be additional assets. Nevertheless, because we are convinced that there is insufficient proof of Ajaka's intent to support the district court's grant of summary judgment to the Defendants, the fact that there may in fact have been a motive to conceal the TILA claim until after the expiration of the 180-day period prescribed by § 1330(a) is not dispositive.

11

prospect of judicial estoppel. The record in this case is silent as to why the bankruptcy attorney delayed in amending the schedules. Moreover, the bankruptcy attorney did amend Ajaka's schedules to include the TILA claim, approximately three months after being advised to do so and less than two months after the lawsuit was filed in which it was first asserted. These facts when taken together, are sufficient in our view to conclude that there exists a question of material fact as to whether Ajaka had the motivation and intent to manipulate the judicial system under the circumstances presented here. Accordingly, the district court erred in granting summary judgment to the Defendants.

**REVERSED** and **REMANDED** for further proceedings.