[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 4, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15081

_____

D. C. Docket No. 06-00270-CV-WTM-4
BKCY No. 04-41875-BKC-LW

MICHAEL WALDRON,
BARBARA A. WALDRON,

Debtors.

_____

MICHAEL WALDRON,
BARBARA A. WALDRON,

Plaintiffs-Appellants,

versus

SYLVIA FORD BROWN,

Defendant,

O. BYRON MEREDITH, III,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(August 4, 2008)**

Before EDMONDSON, Chief Judge, PRYOR, Circuit Judge, and JOHNSON,[*] District Judge.

PRYOR, Circuit Judge:

The issues in this appeal are whether a debtor's claims for legal relief that arose after the confirmation but before the completion of his plan to pay creditors are property of the estate, under Chapter 13 of the Bankruptcy Code, see 11 U.S.C. § 1306(a), and whether the bankruptcy court abused its discretion by requiring the debtor to amend his schedule of assets to disclose proceeds of any settlement of those claims, see Fed. R. Bankr. P. 1009. Michael and Barbara Waldron appeal the judgment that Mr. Waldron's claims for underinsured-motorist benefits are property of the Waldrons' bankruptcy estate and the Waldrons must disclose any settlement of those claims by an amendment of their schedule of assets. Because the plain text of section 1306(a) establishes that Mr. Waldron's claims are property of the estate and the bankruptcy court has the discretion to require an amendment of the debtors' schedule of assets, under Federal Rule of Bankruptcy Procedure 1009, we affirm.

## I. BACKGROUND

The Waldrons filed a petition for relief under Chapter 13, and O. Byron

---

[*] Honorable Inge P. Johnson, United States District Judge for the Northern District of Alabama, sitting by designation.

2

Meredith became the trustee of the bankruptcy estate. On November 16, 2004, the bankruptcy court confirmed the Waldrons' plan to pay their creditors. That plan required the Waldrons to pay the trustee $516 a month.

Mr. Waldron suffered personal injuries in an automobile collision on May 10, 2005, before the Waldrons had completed their payments under the plan. The bankruptcy court approved both the settlement of Mr. Waldron's claim against the other driver for $25,000 and the disbursement of that amount to the Waldrons as part of their exempt property. Mr. Waldron also pursued claims for underinsured-motorist benefits against Georgia Farm Bureau and Selective Insurance Company. The Waldrons moved the bankruptcy court for the authority to settle those claims without further approval by the court. The Waldrons argued that any proceeds of a settlement would not be property of the estate.

The bankruptcy court ruled that Mr. Waldron's remaining claims were property of the estate and any settlement must be disclosed by an amendment of the debtors' schedule of assets and administered in the bankruptcy proceeding. The district court affirmed.

## II. STANDARDS OF REVIEW

3

We review de novo the conclusions of law of both the bankruptcy court and the district court. Equitable Life Assurance Soc'y v. Sublett (In re Sublett), 895 F.2d 1381, 1383–84 (11th Cir. 1990). We review for an abuse of discretion an order of a bankruptcy court that requires a debtor to amend his schedule of assets. Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 888 (8th Cir. 2002); see also Friendly Fin. Discount Corp. v. Jones (In re Jones), 490 F.2d 452, 457 (5th Cir. 1974).

### III. DISCUSSION

We divide our discussion into two sections. First, we address whether Mr. Waldron's claims for underinsured-motorist benefits are property of the estate. Second, we address whether the bankruptcy court abused its discretion when it required the Waldrons to amend their schedules of assets to disclose any settlement of Mr. Waldron's claims.

*A. Mr. Waldron's Claims Are Property of the Estate.*

Sections 1306(a) and 1327(b) of the Code define property of the estate in a proceeding under Chapter 13. Section 1306(a), on the one hand, expansively defines property of the estate to include all property acquired by the debtor after a case commences and until it ends or is converted:

> Property of the estate includes, in addition to the property specified in section 541 of this title—

4

> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). Section 1327(b), on the other hand, returns some property of the estate to the debtor upon confirmation of the plan: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Id. § 1327(b).

The question presented is whether Mr. Waldron's claims for underinsured-motorist benefits, which arose after confirmation of the Waldrons' plan to pay their creditors, are property of the estate under section 1306(a) or whether those claims are vested in Mr. Waldron under section 1327(b). The Waldrons argue that, upon confirmation, "all of the property of the bankruptcy estate 'revested' in the Waldrons by operation of Section 1327(b)" and Mr. Waldron's claims, which are not part of the Waldrons' plan, did not become property of the estate. The trustee responds that Mr. Waldron's claims are property of the estate under section 1306(a).

5

We conclude, based on the plain language of section 1306(a), that Mr. Waldron's claims are property of the estate. Mr. Waldron acquired his claims for underinsured-motorist benefits after the commencement of the Waldrons' bankruptcy case but before their case was dismissed, closed, or converted. Section 1306(a) does not mention the confirmation of the debtor's plan as an event relevant to what assets are property of the estate, see Sec. Bank v. Neiman, 1 F.3d 687, 689–91 (8th Cir. 1993), and section 1327(b) does not address assets acquired after confirmation. Section 1327(b) does not, as the Waldrons argue, automatically vest in the debtor assets acquired after confirmation. "If Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in [section] 1306, it knew how to draft such a provision." Id. at 691 (quoting Riddle v. Aneiro (In re Aneiro), 72 B.R. 424, 429 (Bankr. S.D. Cal. 1987)) (internal quotation marks omitted).

Our analysis is not, as the Waldrons argue, governed by the estate transformation approach that we adopted in Telfair v. First Union Mortgage Corp., 216 F.3d 1333 (11th Cir. 2000). We adopted that approach to resolve the tension between sections 1306(a) and 1327(b) regarding property interests that existed at confirmation:

> We . . . "read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all

6

the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."

Id. at 1340 (quoting Black v. U.S. Postal Serv. (In re Heath), 115 F.3d 521, 524 (7th Cir. 1997)). The debtor in Telfair sought to avoid liability for costs incurred in the collection of mortgage payments owed by the debtor outside his plan. The debtor argued that the mortgage payments were property of the estate protected by the automatic stay and could not be applied to pay the collection costs of the mortgagee, but the obligation to make those payments existed at confirmation and had been disclosed to the bankruptcy court, which allowed the payments to occur outside the debtor's plan. The debtor's assets used to make those mortgage payments were vested in the debtor at confirmation.

We did not address in Telfair entirely new property interests acquired by the debtor after confirmation and unencumbered by any preexisting obligation. We instead stated that "confirmation returns so much of that property to the debtor[]," and "that property" referred to the property of the debtor placed in the control of the bankruptcy court when the debtor filed his petition. Id. New assets that a debtor acquires unexpectedly after confirmation by definition do not exist at confirmation and cannot be returned to him then.

We are not alone in our reading of sections 1306(a) and 1327(b). The First

Circuit also has concluded that assets acquired after confirmation are property of

the estate. Barbosa v. Soloman, 235 F.3d 31, 36–37 (1st Cir. 2000). After their

Chapter 13 plan was confirmed, the debtors in Barbosa sold their investment

property for a price greater than the value stated in their initial schedules of assets.

Id. at 33. The trustee then moved to modify the plan to increase the debtors'

payments to the unsecured creditors. Id. at 33–34. The First Circuit agreed with

the argument of the trustee that, after confirmation, the estate "continues to be

funded by the Debtors' regular income and post-petition assets as specified in

section 1306(a)." Id. at 37. The court reasoned that this approach "harmonizes

two apparent inconsistent sections," 1306(a) and 1327(b); allows for meaningful

plan modification under section 1329; and is consistent with the ability-to-pay

policy underlying Chapter 13. Id. Numerous district and bankruptcy courts have

reached the same conclusion. See, e.g., United States v. Harchar, 371 B.R. 254,

268 (N.D. Ohio 2007) (postconfirmation tax refund); Woodard v. Taco Bueno

Rests., Inc., No. 4:05-CV-804-Y, 2006 WL 3542693, at *10–11 (N.D. Tex. Dec. 8,

2006) (postconfirmation claim for employment discrimination); In re Drew, 325

B.R. 765, 770 (Bankr. N.D. Ill. 2005) (proceeds of a mortgage refinancing

completed postconfirmation); In re Pitts, No. 04-81133, 2005 Bankr. LEXIS 490,

8

at *27 (Bankr. C.D. Ill. Mar. 30, 2005) (life insurance proceeds acquired postconfirmation); In re Grogg, 295 B.R. 297, 302 (Bankr. C.D. Ill. 2003) (same); In re Nott, 269 B.R. 250, 257–58 (Bankr. M.D. Fla. 2000) (postconfirmation inheritance); Annese v. Kolenda (In re Kolenda), 212 B.R. 851, 855 (W.D. Mich. 1997) (automobile acquired with postconfirmation loan); In re Koonce, 54 B.R. 643, 645 (Bankr. D.S.C. 1985) (lottery winnings acquired postconfirmation).

As one court has explained, some property of the estate is vested in the debtor at confirmation, under section 1327(b), but property acquired later vests in the estate, under section 1306(a), until the case ends or is converted:

> While the case is pending, the post-petition property . . . [is] added to the estate until confirmation, the event that triggers [section] 1327(b) and "vests" the property of the estate in the debtor. That is, the property interests comprising the pre-confirmation estate property are transferred to the debtor at confirmation, and this "vesting" is free and clear of the claims or interests of creditors provided for by the plan, [section] 1327(b), (c). Finally, the property of the estate once again accumulates property by operation of [section] 1306(a) until the case is "closed, dismissed, or converted."

City of Chicago v. Fisher (In re Fisher), 203 B.R. 958, 962 (N.D. Ill. 1997). This interpretation "is consistent with the language of sections 1306(a) and 1327(b), and avoids creating a distinction among types of post-confirmation estate property where there exists no textual basis to do so." Id. at 962–63. We affirm the decision that Mr. Waldron's claims are property of the estate.

9

*B. The Bankruptcy Court Did Not Abuse Its Discretion When It Required
the Waldrons To Amend Their Schedules of Assets To Disclose
Any Settlement of Mr. Waldron's Claims.*

Our conclusion that Mr. Waldron's claims for underinsured-motorist benefits are property of the estate answers one of the two questions in this appeal; we must also determine whether the bankruptcy court abused its discretion when it required the Waldrons to amend their schedule of assets to disclose any settlement of Mr. Waldron's claims. The district court and bankruptcy court read our precedents as recognizing a debtor's continuing duty to disclose changes in his financial situation during the pendency of his bankruptcy. In the light of those precedents, the bankruptcy court did not abuse its discretion when it required the Waldrons to amend their schedule of assets to disclose any settlement of Mr. Waldron's claims.

We recognized a debtor's duty to disclose changes in his financial situation in Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002). Levi Billups filed a Chapter 13 petition and did not list any cause of action against his employer as an asset. Id. at 1284. Billups later filed an employment-discrimination suit against Pemco. Id. After Billups filed suit, he requested that his Chapter 13 bankruptcy petition be converted to a Chapter 7 petition. Id. Although the bankruptcy court ordered Billups to file an amended schedule of

10

assets with the Chapter 7 trustee to reflect any financial changes since the filing of his Chapter 13 petition, Billups never disclosed his pending lawsuit.  Id.  Billups later received a "no asset" discharge of his debts.  Id.  The district court concluded that Billups was judicially estopped from asserting his claim against Pemco because he had failed to disclose his claim to the bankruptcy court.  Id.  We affirmed and concluded that Billups had a continuing duty to disclose changes in financial circumstances:

> A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court.  The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change.

Id. at 1286 (citations omitted).

We later explained that a Chapter 13 debtor had a duty to disclose a claim for legal relief regardless of whether he later converted his case under Chapter 7. In De Leon v. Comcar Industries, Inc., Juan De Leon failed to disclose a complaint of employment discrimination that arose before he petitioned for bankruptcy under Chapter 13.  321 F.3d 1289, 1290–91 (11th Cir. 2003).  The district court concluded that De Leon was judicially estopped from prosecuting his complaint of employment discrimination because he had not disclosed the claim.  Id. at 1290. "Despite De Leon's continuing duty to disclose all assets or potential assets to the

11

bankruptcy court, he did not amend his bankruptcy documents to add a potential employment discrimination claim." Id. at 1291–92. We concluded that Burnes applied in proceedings under Chapter 13 and Chapter 7 alike because "any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies." Id. at 1291.

More recently, we concluded that a debtor had a duty to amend his schedule of assets to disclose a complaint that he filed after his plan to pay his creditors had been confirmed. Ajaka v. BrooksAmerica Mortgage Corp., 453 F.3d 1339, 1344 (11th Cir. 2006). After Temidayo Ajaka borrowed from BrooksAmerica $35,000 secured by a second mortgage on his primary residence, he filed a petition under Chapter 13. Id. at 1342. "There [was] no dispute that at the time he filed for bankruptcy," and "at the time the plan was confirmed, Ajaka was not aware of his potential . . . claim." Id. About one month later, Ajaka met with an attorney who told Ajaka that he may have a viable claim under the Truth In Lending Act, 15 U.S.C. §§ 1601–1615, and that Ajaka "would need to disclose his TILA claim as an asset in the bankruptcy proceeding." Ajaka, 453 F.3d at 1342. Ajaka later filed a complaint against BrooksAmerica, but he waited two months to amend his schedule to add the claim for relief as an asset. Id. at 1343. We considered

12

whether Ajaka was estopped from asserting his complaint against BrooksAmerica and concluded that he had "failed to timely amend his Chapter 13 reorganization plan to reflect his contingent TILA claim, and . . . he therefore 'took inconsistent positions . . . under oath in a prior proceeding.'" Id. at 1344 (second omission in original). We stated that Ajaka had a continuing duty to disclose changes in his financial situation and an amendment was the vehicle for that disclosure. Id. We did not affirm the application of judicial estoppel because an issue of material fact existed about whether Ajaka intended to manipulate the judicial system. Id. at 1345–46.

In the light of our precedents, the bankruptcy court did not abuse its discretion when it required the Waldrons to amend their schedule of assets to disclose any settlement Mr. Waldron may acquire after confirmation. Mr. Waldron must disclose the proceeds of any settlement of his claims for underinsured-motorist benefits. We agree with the district court and bankruptcy court that an amendment under Rule 1009 is a proper vehicle for that disclosure. Fed. R. Bankr. P. 1009.

The Waldrons argue that a postconfirmation duty of disclosure for Chapter 13 debtors conflicts with the Federal Rules of Bankruptcy Procedure, but we disagree. Section 521 of the Code, implemented through Rule 1007, requires the

13

debtor to file a schedule of all assets and liabilities at the commencement of the case, 11 U.S.C. § 521; Fed. R. Bankr. P. 1007(b), and Rule 1009 permits a debtor to amend his schedule and a court to order an amendment upon the motion of a party in interest, Fed. R. Bankr. P. 1009. These rules complement the continuing duty to disclose recognized by our precedents.

The disclosure of postconfirmation assets gives the trustee and creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to pay his creditors. A confirmed plan may be modified at the request of the debtor, the trustee, or the holder of an allowed unsecured claim to "(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; [or to] (2) extend or reduce the time for such payments." 11 U.S.C. § 1329(a). Payments under a plan are based on the debtor's disposable income when the plan is confirmed. Id. § 1325(b)(1)(B). When a debtor discloses assets acquired after confirmation, creditors may move the bankruptcy court to modify the plan to increase payments made by the debtor to satisfy a larger percentage of the creditors' claims. Id. § 1329(a)(1). If postconfirmation assets were not subject to disclosure, modifications for increased payments would be rare because few debtors would voluntarily disclose new assets, and the trustee and creditors would be unlikely to obtain this information from sources other than the debtor.

The Waldrons argue that a duty to disclose assets acquired after confirmation unduly burdens Chapter 13 debtors, but we disagree. The bankruptcy court is entitled to learn about a substantial asset that the court had not considered when it confirmed the debtors' plan. The Waldrons speculate that debtors will have to amend their schedule of assets to disclose their wages, "weekly groceries, or every tank of gasoline" as new assets, but these assets are the kind that are taken into account by the debtor's plan or are consumed after having been purchased with assets vested in the debtor at confirmation. The bankruptcy court did not require the Waldrons to amend their schedule of assets to disclose ordinary consumption of goods and services.

We do not hold that a debtor has a free-standing duty to disclose the acquisition of any property interest after the confirmation of his plan under Chapter 13. Neither the Bankruptcy Code nor the Bankruptcy Rules mention such a duty, cf. Fed. R. Bankr. P. 1007(h) (requiring a debtor to supplement his schedule regarding interests acquired after petition under section 541(a)(5) of the Code), and our precedents in Burnes, De Leon, and Ajaka do not address that issue. But the bankruptcy court has the discretion, under Rule 1009, to require a debtor to amend his schedule of assets to disclose a new property interest acquired after the confirmation of the debtor's plan.

The Waldrons also argue that, if the court orders a modification of the plan based on postconfirmation assets, the debtor will not have any assets to satisfy the claims of creditors who relied on postconfirmation assets to extend credit to the debtor, but our conclusion balances the competing interests of a debtor's prepetition and postpetition creditors. "[T]o allow post-confirmation creditors to undermine the ability of pre-confirmation creditors to be paid would place creditors who were or should have been aware of debtors' financial difficulties in a better position than those who may have extended credit before debtors' precarious financial position[s] arose." Kolenda, 212 B.R. at 855. During the pendency of the plan, the "competing demands between pre-petition creditors . . . and post-petition creditors can be reconciled and balanced by the court on a case-by-case basis in the context of a motion for relief from the automatic stay." Montclair Prop. Owners Ass'n v. Reynard (In re Reynard), 250 B.R. 241, 249 (Bankr. E.D. Va. 2000).

As we recognized in Burnes, "[f]ull and honest disclosure in a bankruptcy case is 'crucial to the effective functioning of the federal bankruptcy system,'" 291 F.3d at 1286 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996)), and postconfirmation disclosure reinforces the ability-to-pay standard of Chapter 13. "Congress . . . intended . . . that the debtor

16

repay his creditors to the extent of his capability during the Chapter 13 period." Arnold v. Weast (In re Arnold), 869 F.2d 240, 242 (4th Cir. 1989) (citing Deans v. O'Donnell (In re Deans), 692 F.2d 968, 972 (4th Cir. 1982)); see also 11 U.S.C. §1325(b); Barbosa, 235 F.3d at 37.  "Certainly Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors."  Arnold, 869 F.2d at 242.  When a debtor discloses assets acquired after confirmation to the court, his creditors may share in any unanticipated gain if the court determines that these assets are available to repay debts.  See 11 U.S.C. § 1329(a)–(b).  If he loses a stream of income, a debtor likewise can move to modify his plan to decrease his payments.  Id. § 1329(a); see also Sys. & Servs. Techs., Inc. v. Davis (In re Davis), 314 F.3d 567, 570 (11th Cir. 2002).  Under the ability-to-pay standard, creditors share both the gains and losses of the debtor.

## IV.  CONCLUSION

The judgment in favor of the trustee is

**AFFIRMED**.