**IN the MATTER OF: Janean G. MURDOCK, Debtor**

**Dennis M. Nicodemus and Deborah L. Nicodemus, Debtors**

**Case No. 11–42024, Case No. 11–42563**

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

Signed May 7, 2015

Filed May 8, 2015

Barbara B. Braziel, Savannah, GA, for Debtors.

*OPINION AND ORDER ON MURDOCK DEBTOR'S AND NICODEMUS DEBTORS' MOTIONS FOR TURNOVER OF DEATH BENEFITS HELD BY THE TRUSTEE*

Judge Lamar W. Davis, Jr., United States Bankruptcy Judge, Southern District of Georgia

The Murdock case is before the Court on a Motion for Turnover of Death Bene-

fits Held by the Trustee (Case No. 11–42024, Dckt. No. 82)[1] filed by Janean G. Murdock ("Ms. Murdock") and Trustee's Response to Debtor's "Motion for Turnover of Death Benefits Held By Trustee" (Case No. 11–42024, Dckt. No. 84) filed by O. Byron Meredith III, the Chapter 13 Trustee (the "*Trustee*"). The Motion seeks to retain approximately $50,000.00 in life insurance proceeds that Ms. Murdock received due to the death of a friend. Case No. 11–42024, Dckt. No. 82. In a related matter, Dennis M. Nicodemus and Deborah L. Nicodemus ("Debtors") filed a Motion for Turnover of Death Benefits Held by the Trustee (Case No. 11–42563, Dckt. No. 42) to which the Trustee filed a Memorandum of Law in Opposition (Case No. 11–42563, Dckt. No. 56). In this case Debtors seek turnover of $5,102.00, representing additional proceeds from Deborah Nicodemus's deceased mother's probate estate which Debtors had voluntarily remitted to the Trustee. Case No. 11–42563, Dckt. No. 42. Because these cases have similar facts and turn on the Court's interpretation of 11 U.S.C. §§ 541(a)(5) & 1306(a)(1), the matters are consolidated for the purpose of this Opinion and Order.

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the United States District Court's Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) & (B). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.

*FINDINGS OF FACT*

In each case the debtor(s) along with the Trustee filed Joint Stipulations of Fact. These facts which are not in dispute are sufficient for the Court to make its Conclusions of Law and are therefore accepted and quoted herein verbatim. The facts of the Murdock case are as follows:

1. The Debtor filed the above-captioned Chapter 13 petition on September 29, 2011.

2. O. Byron Meredith, III was appointed as Chapter 13 Trustee ("*Trustee* ").

3. The Chapter 13 plan was confirmed November 29, 2011.

4. The current Chapter 13 plan payments are $573.00 per month.

5. The applicable commitment period in this Chapter 13 case is 60 months, meaning that the Debtor must remain in the Chapter 13 case for 60 months unless the Debtor pays 100% of allowed claims.

6. The current confirmed dividend to general unsecured creditors is 54.67%.

7. On February 5, 2015 the Debtor amended Schedule B to her petition to disclose property valued at $50,000.00, described as "CASH PROCEEDS—LIFE INSURANCE, CATHERINE M. BRASWELL" (Doc. # 80; the "*Life Insurance Proceeds*").

8. The Debtor received the Life Insurance Proceeds due to the passing of a friend on January 2, 2015.

9. The Debtor's interest in the Life Insurance Proceeds vested more than 180 days after the commencement of this Chapter 13 case.

10. The Debtor also amended Schedule C on February 5, 2015 to claim $5,596.00

---

1. Although Ms. Murdock's Motion is titled Motion for Turnover of Death Benefits Held by the Trustee, according to the stipulated facts, the life insurance proceeds are actually in a checking account with Kansas City Life rather than in the possession of the Trustee. Therefore, the Motion is actually a motion to retain insurance proceeds.

of the Life Insurance Proceeds as exempt pursuant to O.C.G.A. § 44–13–100(a)(6) (Doc. # 81).

11. The balance of the Life Insurance Proceeds, totaling $44,404.00, has not been claimed exempt.

12. On February 9, 2015, Debtor filed a Motion to Retain Insurance Proceeds (Doc. # 82) averring that the funds in excess of the allowed exemption are a result of Debtor's interest in inheritance [sic] which vested more than 180 days after commencement of the Chapter 13 case and therefore, are not property of the bankruptcy case.

13. On February 12, 2015, the Trustee filed a Modification of Plan after Confirmation (Doc. # 85).

14. As of March 16, 2015 the Trustee has not received any portion of the Life Insurance Proceeds.

15. The above referred to Life Insurance Proceeds in the amount of $50,000.00, less $2,455.00 paid for funeral expenses, are held in an interest bearing special legacy checking account with Kansas City Life.

Case No. 11–42024, Dckt. No. 92.

The stipulated facts of the Nicodemus case are as follows:

1. The Debtors filed the above-captioned Chapter 13 petition on December 8, 2011.

2. O. Byron Meredith, III was appointed as Chapter 13 Trustee (*"Trustee"*).

3. The Chapter 13 plan was confirmed March 6, 2012.

4. The current Chapter 13 plan payments are $499.00 per month.

5. The applicable commitment period in this Chapter 13 case is 36 months, meaning that the Debtors must remain in the Chapter 13 case for at least 36 months unless the Debtors pay 100% of allowed claims. However, based upon the claims filed and confirmed dividend to general unsecured creditors, the plan term was extended from 36 months to approximately 60 months to pay the case as confirmed.

6. The current confirmed dividend to general unsecured creditors is 8.202%.

7. On February 19, 2013, the Debtors filed an Amended Schedule B to their petition to disclose property valued at $13,443.62, described as "CASH PROCEEDS—DEATH BENEFITS" (Doc. # 38; the *"Inheritance"*).

8. The Debtors filed an Amended Schedule C on February 19, 2013 to claim $4,570.00 of the Inheritance as exempt pursuant to O.C.G.A. § 44–13–100(a)(6) (Doc. # 39).

9. On March 12, 2013, Debtor voluntarily paid to the Chapter 13 Trustee the sum of $8,873.62, and the Trustee disbursed said funds in accordance with the confirmed plan.

10. On September 2, 2014, the Debtors sent to the Trustee proceeds in the amount of $5,102.00. The Debtors sent a note with the funds which stated the amount "should be enough for discharge."

11. At the time the proceeds were sent to the Trustee, The [sic] Debtors provided no explanation as to where the proceeds had been acquired.

12. The Debtors' [sic] filed the Motion for Turnover of Death Benefits Held by the Trustee (Doc. # 42) on September 10, 2014 averring that the funds paid to the Trustee by the Debtor are a result of Debtor's interest in the inheritance which vested more than 180 days after the commencement of this Chapter 13 case and, therefore, are not property of the bankruptcy estate.

13. Presently, the Trustee is in possession of the funds in the amount of

$5,102.00. The Trustee will hold these funds until further order of the Court. Case No. 11–42563, Dckt. No. 57.

### CONCLUSIONS OF LAW

■ The crux of these two cases is whether these life insurance and inheritance proceeds are property of the estate. Property of the bankruptcy estate includes:

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
>
> > (A) by bequest, devise, or inheritance;
> >
> > . . . .
> >
> > (C) as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5). In both cases the debtor(s) acquired an interest in the proceeds after the 180–day period expired. However, Chapter 13 has a separate "Property of the estate" section which incorporates § 541 and adds certain property acquired post-petition:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> > (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]

11 U.S.C. § 1306(a).

There is a split of authority among courts as to whether the 180–day limit from § 541 applies to Chapter 13 life insurance and inheritance proceeds received after that time period. The most recent decision in this district, *In re Taylor* decid-ed by my colleague Judge Coleman, recognized this split of authority and reveals a split of opinion within this district. *In re Taylor*, 523 B.R. 915, 919 (Bankr.S.D.Ga.2014)(Coleman, J.)(collecting cases). To date, only one court of appeals, the Fourth Circuit, has ruled on this issue. *Carroll v. Logan*, 735 F.3d 147 (4th Cir.2013). The Fourth Circuit found that "[t]he overwhelming majority of courts to have addressed this issue 'agree that § 1306 modifies the § 541 time period in Chapter 13 cases.' " *Id.* at 151 (*quoting Vannordstrand v. Hamilton (In re Vannordstrand)*, 356 B.R. 788 (10th Cir. BAP 2007)(collecting cases)).

In analyzing the statutes' plain language, the Fourth Circuit outlined what has been the majority view's position:

> With Section 541, Congress established a general definition for bankruptcy estates. With Section 1306, it then expanded on that definition specifically for purposes of Chapter 13 cases. Thus, "Section 1306 broadens the definition of property of the estate for chapter 13 purposes to include all property acquired and all earnings from services performed by the debtor after the commencement of the case." S.Rep. No. 95–989, at 140–41 (1978).

> The statutes' plain language manifests Congress's intent to expand the estate for Chapter 13 purposes by capturing the types, or "kind," of property described in Section 541 (such as bequests, devises, and inheritances), but not the 180–day temporal restriction. 11 U.S.C. § 1306(a). This is because "[t]he kind of property is a distinct concept from the time at which the debtor's interest in the property was acquired." *In re Tinney*, 07–42020–JJR13, 2012 WL 2742457, at *2 (Bankr.N.D.Ala. July 9, 2012). And on its face, Section 1306(a) incorporates only the kind of property described in

Section 541 into its expanded temporal framework.

*Id.* at 150. Moreover,

> if Section 541's 180–day rule restricts what is included in a Chapter 13 estate, then Section 1306(a), which expands the temporal restriction for Chapter 13 purposes, loses all meaning. By contrast, neither statute is rendered superfluous, and both are given effect, if Section 1306(a)'s extended timing applies to Chapter 13 estates and supplements Section 541 with property acquired before the Chapter 13 case is closed, dismissed, or converted.

*Id.* at 152. The majority also takes the reasoned view that § 1306 is specific to Chapter 13 whereas § 541 is a general provision, and therefore pursuant to "the specific governs the general" canon of statutory construction, § 1306's expanded temporal period trumps § 541's restrictions. *Id.* at 152.

The other line of cases views the plain language as supporting its position. It contends that the principle of statutory construction requiring that courts give effect to every word of a statute and that no language should be superfluous wherever possible contradicts the broad interpretation of § 1306(a)(1) argued by the majority. *See In re Walsh,* 2011 WL 2621018, at *2 (Bankr.S.D.Ga. June 15, 2011)(Dalis, J.). Such a broad interpretation of § 1306(a)(1) would arguably render § 1306(a)(2) superfluous. *See In re Key,* 465 B.R. 709, 712 (Bankr.S.D.Ga.2012)(Barrett, J.)("By the provisions of § 1306(a)(2), which pulls post-petition wages into the chapter 13 estate, Congress specifically addressed the express exclusion in § 541(a)(6) of post-petition earnings from property of the estate. Congress did not take such steps to include the property excluded in § 541(a)(5)."). Moreover, this line of cases argues that the more specific date restriction of § 541(a)(5) should control over § 1306(a)(1)'s more general language pursuant to "the specific governs the general" canon of construction. *See In re McAllister,* 510 B.R. 409, 420 (Bankr.N.D.Ga. 2014); *Walsh,* 2011 WL 2621018, at *2.

After careful consideration of the countering arguments on this issue, I agree with the majority view and the Fourth Circuit's plain language analysis from *Carroll v. Logan.*[2] It follows from this analy-

---

**2.** It should be noted that although the Eleventh Circuit has not ruled on this specific issue, it did advocate for broad reading of § 1306(a) in *Waldron v. Brown (In re Waldron),* 536 F.3d 1239 (11th Cir.2008), a case under different factual circumstances which originated in this Court. In *Waldron,* the Eleventh Circuit cited *In re Nott,* 269 B.R. 250, 257–58 (Bankr.M.D.Fla.2000), a case which held that inheritance received by the debtor post-confirmation and outside the 180-day time period was property of the bankruptcy estate under § 1306. *Waldron,* 536 F.3d at 1243. The court cited this case favorably for an established approach in interpreting sections 1306(a) and 1327(b) that is, *inter alia,* "consistent with the ability-to-pay policy underlying Chapter 13." *Id.*

Indeed, the Fourth Circuit in *Carroll* discussed this policy matter in finding that inheritance which postdated debtors' petition by more than 180 days was part of the bankruptcy estate.

> Section 1306's extension of a Chapter 13 bankruptcy estate's reach until the Chapter 13 case is closed, dismissed, or converted constitutes "a rational response to the relevant situation." *Salomon Forex,* 8 F.3d at 975. Chapter 13 proceedings provide debtors with significant benefits: For example, debtors may retain encumbered assets and have their defaults cured, while secured creditors have long-term payment plans imposed upon them and unsecured creditors may receive payment on only a fraction of their claims. *See* 11 U.S.C. §§ 1322, 1325. In exchange for those benefits, a Chapter 13 debtor makes a multi-year commitment to repay obligations under a court-confirmed plan. *Id.* The repayment plan remains subject to modification for reasons including a debtor's decreased ability to pay

sis that the insurance and inheritance proceeds of the debtor(s) are a "kind" of property outlined in § 541. But, because § 1306 does not adopt any temporal restrictions or expansions from § 541, the estate should include this kind of property until the case is closed, dismissed, or converted. *See In re Gilbert*, 526 B.R. 414, 417 (Bankr.N.D.Ga.2015). Accordingly, the insurance proceeds received by Ms. Murdock, now being held in a checking account with Kansas City life, and the additional inheritance proceeds received by Mr. and Mrs. Nicodemus, now being held by the Trustee, fall within the expanded definition of "Property of the estate" as outlined in § 1306(a).

### ORDER

*In re Murdock*, Case No. 11–42024:

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is the ORDER of this Court that Ms. Murdock's Motion for Turnover of Death Benefits Held by the Trustee (Case No. 11–42024, Dckt. No. 82) is hereby denied. The $50,000.00 of life insurance proceeds less funeral expenses and any allowed exemption being held by Kansas City Life shall be turned over to the Trustee to be dispersed pursuant to Ms. Murdock's confirmed Plan.

*In re Nicodemus*, Case No. 11–42563:

It is FURTHER ORDERED that Debtors' Motion for Turnover of Death Benefits Held by the Trustee (Case No. 11–42563, Dckt. No. 42) is also denied. The Trustee is free to disperse the additional inheri-

according to plan, as well as the debtor's increased ability to pay. *See* 11 U.S.C. § 1329. As we have stated before, "[w]hen a [Chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth." *In re Arnold*, 869 F.2d 240, 243 (4th Cir.1989).

*Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir.2013)(footnotes omitted).

tance proceeds he is currently holding in the amount $5,102.00 pursuant to Debtors' confirmed Plan.

The fact that the Eleventh Circuit cited *Nott* and adopted the ability-to-pay policy of Chapter 13 in *Waldron* leads to a reasonable conclusion that the court might follow the Fourth Circuit under facts similar to the cases *sub judice*.