[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-12086

Non-Argument Calendar

_____

VONDA JAMES,

Plaintiff-Appellant,

*versus*

PENNEY OPCO, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:23-cv-01557-ACA

_____

Before JORDAN, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Vonda James filed a federal employment discrimination suit against her former employer, JCPenney.[1]  The district court, relying on the doctrine of judicial estoppel, dismissed the lawsuit because it was predicated on representations that were inconsistent with James's filings in an earlier bankruptcy case.  The district court's decision to dismiss James's lawsuit was not an abuse of discretion, and so we affirm.

## I

James filed for Chapter 13 bankruptcy in 2017.  It was not the first time.  James had also filed for Chapter 13 bankruptcy in 2015, 2012, and 1996.  In one of those bankruptcies—the one from 2012—James disclosed, as required by the standard bankruptcy form, that she had a pending lawsuit.  After the lawsuit settled, James amended her bankruptcy petition to reflect this development.

James was not so attentive after she filed her 2017 bankruptcy.  Sometime in 2018 or 2019, James started working at JCPenney.  At that point, her Chapter 13 bankruptcy was still ongoing—she had filed a plan laying out how she would make payments on her outstanding debts, and that plan was still in place.  In late 2021, according to her complaint, James was the target of racial slurs

---

[1] Formally, Penney OpCo, LLC.

while at work at JCPenney.  She then filed a charge of discrimination with the EEOC in February 2022.  Although her Chapter 13 bankruptcy was still ongoing, James did not amend her bankruptcy filings to disclose her employment dispute.  James's bankruptcy wrapped up in November 2022 when she completed her Chapter 13 payment plan.  A year later, in November 2023, after the EEOC issued a notice of determination, James filed this lawsuit against JCPenney.

JCPenney moved to dismiss the lawsuit on the basis of judicial estoppel, the district court granted the motion, and this appeal followed.

## II

Judicial estoppel is an equitable doctrine "intended to 'prevent the perversion of the judicial process' and 'protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"  *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)) (alteration and omission accepted).  We use "a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system."  *Id.* at 1181 (citation and quotation marks omitted).  We review a district court's application of this test for abuse

4                          Opinion of the Court                    24-12086

of discretion, and its finding of underlying facts for clear error. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).[2]

## A

The first prong of the judicial-estoppel test is satisfied when a party "took a position under oath in [a] bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of the civil lawsuit." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643 (11th Cir. 2019) (footnote, citation, and quotation marks omitted). When a party files for bankruptcy, she must provide to the bankruptcy court sworn statements disclosing debts and assets. *See* 11 U.S.C. § 521(a)(1)(B)(i). That duty to disclose applies to Chapter 13 bankruptcies, and is a continuing obligation that lasts "even after confirmation of the [bankruptcy] petitioner's plan." *Smith*, 940 F.3d at 643. "Courts consider the omission of a legal claim from a bankruptcy asset schedule to be a denial that the claim exists." *Id.* at 644. Conversely, "a complaint in district court seeking damages on the same claim is considered an assertion that the claim does indeed exist." *Id.*

James took inconsistent positions. On the one hand, on Schedule A/B of James's Chapter 13 bankruptcy filing, she responded "No" to the question whether she had any "[c]laims against third parties, *whether or not you have filed a lawsuit* or made

---

[2] JCPenney accuses James of failing to properly preserve many of her arguments about the application of the *Slater* test. Because the issues James presents on appeal fail on the merits, we need not and do not consider whether James waived anything with respect to the *Slater* test.

24-12086                Opinion of the Court                5

a demand for payment." Mot. to Dismiss, Ex. 1 at 14, Doc. 9-2 (emphasis added). James provided this answer "under penalty of perjury." *Id.* at 6. The "no" response may well have been true at the time James initially filed her bankruptcy petition. But she never amended Schedule A/B to apprise the bankruptcy court or her creditors of her employment dispute with JCPenney—not even after she filed a charge with the EEOC. That omission of her legal claim amounted to a denial that the claim existed. *Smith*, 940 F.3d at 644. On the other hand, in this lawsuit James very much insists that she has a legal claim against a third party: JCPenney. James, therefore, has taken inconsistent positions.

James's arguments to the contrary do not persuade us. For one thing, she stresses that the "no" response was true at the time she first filed her bankruptcy petition. The response may well have been accurate at the time, but we have been clear that the "duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court." *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (citation and quotation marks omitted). She also points to a district court decision which "h[eld] that mere failure to amend a bankruptcy schedule is not the same as taking inconsistent positions under oath." *Snowden v. Fred's Stores of Tenn., Inc.*, 419 F. Supp. 2d 1367, 1372 (M.D. Ala. 2006). But in *Snowden*, the bankruptcy petitioner *did* eventually attempt to amend her asset schedule. *See id.* at 1369. Here, James has made no such attempt. And we have "held that failure to timely amend a Chapter 13 reorganization plan to reflect a pending claim while simultaneously pursing that claim in another court of

law constitutes inconsistent positions under oath." *Robinson*, 595 F.3d at 1275 (citing *Ajaka*, 453 F.3d at 1344). *Snowden*, of course, does not bind us, and to the extent that it is inconsistent with *Robinson* and *Ajaka*, neither could we follow *Snowden*, even were it persuasive. So, it was appropriate for the district court to conclude that James took inconsistent positions.

## B

"[T]o determine whether a plaintiff's inconsistent statements were calculated to make a mockery of the judicial system, a court should look to all the facts and circumstances of the particular case." *Slater*, 871 F.3d at 1185. "When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered." *Id.* These factors are "not exhaustive." *Id.* at 1185 n.9.

Our decision in *Weakley v. Eagle Logistics*, 894 F.3d 1244 (11th Cir. 2018), is illustrative. There, we affirmed a district court's finding that a plaintiff's inconsistent statements were calculated to mock the judicial system. *See id.* at 1246–47. The district court

there noted that, in the plaintiff's separate bankruptcy proceedings: (1) he failed to add his legal claim to his bankruptcy filings even though he made multiple other amendments; (2) he might have been able to benefit financially from concealing his legal claims; and (3) he presumably was familiar with the requirements of bankruptcy because he had filed for bankruptcy four times before. *See id.*

The factors considered by the district court here are similar. The district court noted that: James was represented by counsel throughout her bankruptcy filing; she was familiar with bankruptcy law's requirements given that she had filed for Chapter 13 bankruptcy thrice before; she had identified a potential legal claim in a previous bankruptcy filing, indicating that she was aware of this particular disclosure obligation; she had amended her disclosures in her 2017 bankruptcy to reflect changes in her employment, which likewise indicated that she was familiar with her continuing duty to update her bankruptcy filings; and her failure to include her claim against JCPenney may have affected the accuracy of the calculations in her Chapter 13 payment plan  Also, in keeping with its obligation to consider relevant facts and circumstances, the district court noted that the proof-of-claim deadline had passed by the time James filed her EEOC charge, which might have cut against a finding of calculation to mock.  The district court nonetheless concluded that, because creditors can make untimely claims, James's nondisclosure could have affected creditors' decisions.  Because, as required by *Slater,* the district court considered "all the facts and circumstances of the particular case," 871 F.3d at 1185, and because

the facts and circumstances are similar to those in *Weakley*, we conclude that the district court did not clearly err or abuse its discretion.

Much of James's briefing boils down to an assertion that the district court should have found that her failure to amend her bankruptcy schedules was inadvertent. James emphasizes that years passed between her bankruptcy filing and her EEOC charge; that she had little communication with the bankruptcy trustee; that her representation by bankruptcy counsel ended before she filed her civil lawsuit; that when she had disclosed legal claims in a previous bankruptcy, the filing of the lawsuit was relatively close to the filing of the bankruptcy; and that the fact that she amended her 2017 bankruptcy schedules to indicate that she had a new job should actually count as evidence of her honesty. It's conceivable that the district court—by emphasizing these facts and alternative inferences—could have reached a different conclusion. But "abuse of discretion review requires us to affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Robinson*, 595 F.3d at 1273 (citation and quotation marks omitted). And, with respect to a district court's factual findings, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Given that deferential review, we cannot agree with James that the district court abused its discretion or committed clear error.

James makes three more unavailing arguments. First, she stresses that she did not file the present lawsuit until after her bankruptcy case had fully wrapped up. This is true enough, but Schedule A/B asked for any "[c]laims against third parties, *whether or not you have filed a lawsuit.*" Here, we know James's *claim* preexisted the end her bankruptcy: she filed her EEOC charge in February 2022, several months before the bankruptcy ended. The timing of James's lawsuit is relevant to the intent-to-mock prong—but the district court noted the timing and included it in its all-things-considered assessment of James's intent. It was not reversible error to decline to draw James's preferred inference from the timing. Second, James argues that her EEOC charge did not involve a claim for money damages, and so it was unlikely that she was intending to keep assets from creditors. Yet, as the district court pointed out, James's underlying legal claim for employment discrimination might have value, even if the EEOC charge did not ask for damages. After all, *this* lawsuit—which is based on that underlying claim—requests compensatory, punitive, and nominal damages. *Cf. Robinson*, 595 F.3d at 1276 (pointing out that a plaintiff "obviously had some expectation of monetary recovery, as she sought compensatory, punitive and liquidated damages in her lawsuit"). Finally, she insists that the district court should have held an evidentiary hearing before applying judicial estoppel. Evidentiary hearings can be helpful, and we have implied that they might be used in judicial-estoppel cases. *See Smith*, 940 F.3d at 644–45. Still, we have never suggested that an evidentiary hearing is necessarily required—much less in these circumstances, where James does not

appear to have ever actually requested such a hearing. Therefore, we are not persuaded that the district court committed reversible error in its application of the intent-to-mock prong of the *Slater* test.

### III

For the foregoing reasons, we hold that the district court did not abuse its discretion in granting JCPenney's motion to dismiss on the basis of judicial estoppel.

**AFFIRMED.**