A99A1512. WHITE CLOUD CHARTER, INC. v. DeKALB COUNTY BOARD OF TAX ASSESSORS.
(520 SE2d 708)

Judge Harold R. Banke.

White Cloud Charter, Inc. ("White Cloud") appeals the judgment of the Superior Court of DeKalb County affirming the decision of the DeKalb County Board of Equalization ("Board") upholding an ad valorem tax assessment on an aircraft owned by White Cloud.

When White Cloud's aircraft was appraised for tax year 1997 at a fair market value of $5,894,000, White Cloud appealed to the Board. After the Board found in favor of DeKalb County ("County"), White Cloud appealed to the superior court. In its appeal, White Cloud challenged both the taxability of its aircraft and, in the alternative, the failure of the Board to apportion the taxes since the airplane was only in this State for 164.5 days of the year.

The superior court conducted a de novo review. At issue was the applicability of OCGA § 48-5-16 (e), which subjects a nonresident's aircraft to ad valorem taxation in a county where the aircraft has its "primary home base."[1] The legislature defined "primary home base" as: "an airport where an aircraft is principally hangared or tied down and out of which its flights normally originate." OCGA § 48-5-16 (e) (1) (B).

Prior to trial, the parties stipulated to these facts: (1) In 1996, 45 flights originated from Peachtree DeKalb Airport ("PDK") and no other single airport location had more than or an equal number of originating flights; (2) In 1996, three flights originated from White Plains, New York; and (3) In 1996, this aircraft was physically located in White Plains, New York on 34 different dates and on either 186 or 159.25 days at PDK airport.

---

[1] The statute provides in pertinent part: "[a]ny person who owns tangible personal property in the form of an aircraft which has its primary home base in a county in this state other than the county in which such person maintains a permanent legal residence shall return such property for taxation to the tax commissioner or tax receiver of the county in which such primary home base is located." OCGA § 48-5-16 (e) (2).

Notwithstanding these stipulated facts, White Cloud argued that in determining the "primary home base," the Board also had to consider the location of its company office, the New York residency of the flight crew members, and the location at which most maintenance activities were performed. White Cloud emphasized its status as a Delaware corporation with a principal place of business in White Plains, New York. It offered evidence that in 1997 it had rented hangar space in White Plains. According to the chief pilot's affidavit, "[w]e consider White Plains to be the home base of the aircraft and it receives all of its scheduled maintenance there."

The trial court found that while White Cloud's principal place of business may well have been New York, the aircraft at issue was principally hangared at PDK airport and the aircraft's flights normally originated from there. Determining that under OCGA § 48-5-16 (e) the plane's primary home base was in DeKalb County, the court upheld the tax assessment of $94,681.21 on the aircraft. Enumerating five errors, White Cloud appeals. *Held*:

1. White Cloud contends that the trial court erred in affirming the Board because revenue statutes, when ambiguous, must be strictly construed in favor of the taxpayer and against the taxing authority. White Cloud claims that the definition of "primary home base" is ambiguous and must be construed against the taxing authority.

Under the guise of construing a statute, we are not at liberty to rewrite it. *Cooper v. Edwards*, 235 Ga. App. 48, 50 (508 SE2d 708) (1998); *Tharpe v. State*, 207 Ga. App. 900 (1) (429 SE2d 342) (1993). Nothing in the statute authorizes consideration of matters not relating to where the aircraft is principally hangared or tied down and from where its flights normally originate. We cannot create ambiguity where there is none.

As the party initiating the appeal, White Cloud bore the burden of proving that in 1996 this aircraft was not principally hangared at PDK airport and that its flights normally did not originate from that airport. See *Hirsch v. Joint City County Bd. of Tax Assessors*, 218 Ga. App. 881, 882 (1) (463 SE2d 703) (1995). This it failed to do. The stipulated facts, as well as the flight logs entered as exhibits, indicate that this particular aircraft was principally hangared in DeKalb County and nowhere else, and that most of the aircraft's flights originated from PDK airport in the County.

2. White Cloud claims that the court erred in affirming the Board's decision because the Board's calculation method was arbitrary, capricious and had no basis in fact or law. It claims that the 1997 taxes should have been based on information from 1997, not 1996.

This argument overlooks the obvious problem that it would not

be possible to determine the location of the principal hangaring and the normal origin of flights until after the year concluded. Otherwise, aircraft might be subject to assessment in the wrong county. Moreover, a county's appraiser would need to be omniscient to anticipate that an aircraft would be primarily located within the county's boundaries and have most of its flights originating therefrom nearly a year before the flights occurred and the aircraft had been hangared.

Thomas Starnes, a 25-year veteran appraiser for the County, explained that initially a fair market value determination is made using a standard blue book for aircraft to ensure uniformity in assessments. Starnes testified that after this particular aircraft had been appraised, White Cloud appealed. Starnes then requested and obtained the flight records for 1996 from White Cloud. By using that flight data, Starnes determined on which calendar dates this aircraft had physically been present at different airports and was able to ascertain the origin of its flights. Starnes testified that the taxability of an aircraft is mainly determined by the flight logs, which for this particular plane showed mainly DeKalb both as to location and flight origination for calendar year 1996.

Notwithstanding White Cloud's suggestion that the County "could have borrowed" from commercial airliner statutes which analyze the ratio of plane hours in this State to total system plane hours in order to calculate the primary home base of an aircraft, White Cloud cites no authority, and we know of none, in support of this methodology. In light of the express terms of OCGA § 48-5-16 and in the absence of applicable authority to the contrary, we cannot say that the trial court abused its discretion or acted arbitrarily in this matter.

3. White Cloud contends that the court erred in affirming the decision of the Board because this aircraft was not in Georgia on January 1 of either 1996 or 1997 and, thus, was not subject to taxation under OCGA § 48-5-10.

While the applicable Code section says "principally hangared or tied down" and "out of which its flights normally originate," it does not require that the aircraft itself be physically present in a county on the first day of the calendar year. Otherwise, resourceful owners could strategically situate their aircraft outside this State for one day and thereby avoid tax liability for an entire year.

4. White Cloud claims that the court erred in affirming the Board even if the statute at issue is not ambiguous and even if the County's method of calculation was not improper under the statute, because the tax assessment did not apportion the tax.

Although the Board claims that White Cloud did not raise the issue of apportionment, the notice of appeal shows otherwise, as does

the transcript of the hearing. But, in these circumstances, apportionment was neither required nor authorized by law. See OCGA § 48-5-543. The apportionment statute applies to airline companies and requires the submission of a tax return to the State. OCGA § 48-5-541 (a). Here, White Cloud admitted that this aircraft had not been used for commercial purposes in 1996. White Cloud was not an airline company. In addition, White Cloud stipulated to the fact that it did not apply for apportionment with the Georgia Department of Revenue for this aircraft for 1996 and 1997. White Cloud offers no authority and we have found none which requires a county to apportion ad valorem taxes under this statute.

5. White Cloud asserts that the court erred in affirming the Board's decision because the Board failed to "specifically decide each question presented by the appeal," and failed to specify, in its decision, "the reason or reasons for each such decision as to the specific issues . . . raised by the taxpayer." OCGA § 48-5-311 (e) (6) (D) (i).

This argument lacks merit for two reasons. First, by failing to obtain a ruling from the trial court on the Board's purported error, White Cloud waived the issue. See *Wilkes v. Redding*, 242 Ga. 78, 80 (247 SE2d 872) (1978). Second, even assuming arguendo the existence of an error, any such purported error would have been rendered moot after the trial court conducted its de novo review of the issues. OCGA § 48-5-311 (g) (3); see *Hirsch*, 218 Ga. App. at 882 (1).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 30, 1999 — CERT. APPLIED FOR.

*Arnall, Golden & Gregory, Allen I. Hirsch, Shawn A. Kachmar*, for appellant.

*Jones, Morrison, Womack & Dearing, James E. Dearing, Jr., Ragsdale, Beals, Hooper & Seigler, Lisa F. Stuckey*, for appellee.