A03A0410. MACK v. GEORGIA AUTO PAWN, INC. et al.
(585 SE2d 661)

SMITH, Chief Judge.

This appeal concerns the application of the statutory ante litem notice provisions of the Georgia Pawnshop Act, OCGA § 44-12-130 et seq., to an attempted class action. The trial court determined that the individual plaintiff's efforts to comply with the ante litem notice provisions of that statute were not sufficient as to the members of the purported class. We agree and affirm the trial court's dismissal of the complaint and the award of attorney fees under OCGA § 44-12-131 (a) (7) (C).

On September 28, 2000, Sante L. Mack entered into a title loan transaction with Georgia Auto Pawn, Inc. (GAP) and pledged his 1992 Oldsmobile Cutlass as security in exchange for a 30-day cash loan of $768. The annualized interest rate of 300 percent resulted in a finance charge of $192 for the 30-day period. Mack and GAP extended the maturity date of the original pawn transaction in Octo-

ber, then again in November, December, and January 2001. The record shows that between October 30, 2000, and January 19, 2001, Mack made a series of cash payments to GAP that totaled $1,412.10.

Shortly after making these payments, Mack filed suit against GAP and Title Loans of America, Inc. (TLA) seeking damages and equitable relief for himself and other persons similarly situated. Mack alleged that GAP had violated certain mandatory disclosure provisions of the Georgia Pawnshop Act by failing to reveal fully all of the interest and pawnshop charges, particularly those applicable to contract continuation and extension periods. Mack sought class status for his suit and recognition as representative for the class. He alleged that GAP's contract failed to include all the disclosures required by OCGA § 44-12-138 (b) (6) and (8). He also claimed that GAP had improperly charged him $18 for the cost of filing a lien and, in fact, had lent him only $750 after subtracting the $18 but then had calculated the finance charges on $768 not $750. Finally, Mack asserted that "[c]harges not allowed, as a matter of law, have been collected by defendant from plaintiff and from hundreds (perhaps thousands) of persons equally situated with plaintiff."

Pawn transactions are governed by the statutory scheme laid out with considerable specificity in the Georgia Pawnshop Act. *Glinton v. And R, Inc.*, 271 Ga. 864, 867 (524 SE2d 481) (1999). It requires a pawnbroker to provide certain detailed disclosures in every pawn transaction. OCGA § 44-12-138 (b). If a pawnbroker fails to set forth properly "[a]ny interest, fees, or charges collected which are undisclosed, improperly disclosed, or in excess of that allowed by this subsection," then the pledgor or seller may have an action at law to recover such amounts. OCGA § 44-12-131 (a) (7) (A). But, as a mandatory precondition to filing suit, subsection (a) (7) (C) of OCGA § 44-12-131 requires that ante litem notice be given to the pawnbroker who then can avoid suit by making a "good faith offer" to the potential litigant.

Before filing suit, in an effort to comply with the statutory ante litem notice requirements, Mack's counsel sent a letter on his behalf to GAP by certified mail on January 29, 2001. In response to Mack's notice, GAP tendered a check payable to Mack "in the amount of $644.10, representing all of the charges collected from inception beyond the principal amount." Mack rejected the offer and filed suit against GAP and TLA.[1]

---

[1] TLA apparently is not a "pawnbroker" as defined by OCGA § 44-12-130 (2). Terry Fields, the chief financial officer of TLA, testified that although GAP is a subsidiary of TLA, GAP and TLA are completely separate entities and operate as "independent corporations." Fields testified that "TLA is not licensed as a pawnbroker, and is not involved in advancing funds to customers in pawn transactions." TLA is not a party to this appeal.

GAP and TLA argued that Mack's failure to accept the tender made him liable for attorney fees, costs, and expenses of litigation. On the basis of the offer to Mack and the alleged insufficiency of the ante litem notice pertaining to the putative class members, they moved to dismiss the complaint. Thereafter, Mack amended his complaint to include claims raised under the federal Truth in Lending Act. The trial court dismissed the claims brought under the Georgia Pawnshop Act but decided to allow the case to proceed as to the alleged Truth in Lending Act violations.[2] Mack appeals that decision.

1. Mack contends that the trial court erred in finding that GAP's offer of payment constituted a "good faith offer," given that GAP had been placed on notice as to claims of those individuals who were similarly situated.

Mack's argument overlooks the explicit and unambiguous provisions of the pawnshop statute. Under the statutory framework, after a pledgor provides the pawnbroker with the requisite notice that a lawsuit is contemplated and the pawnbroker responds by promptly making a "good faith offer," but the pledgor proceeds to file suit, OCGA § 44-12-131 (a) (7) (C) requires the trial court to evaluate whether the offer foreclosed suit. According to the statutory scheme, "[i]f the court finds that during the 30 days following receipt of this notice the pawnbroker made a good faith offer to return any excess, undisclosed, or improperly disclosed charges, the court *shall award* reasonable attorneys' fees, court costs, and expenses of litigation to the pawnbroker." (Emphasis supplied.) Id. Without question, the statute requires the trial court to act as factfinder to determine whether the pawnbroker extended a "good faith offer" to the pledgor or seller involved in a pawn transaction.

"[A] statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation." (Citation omitted.) *Tallman v. Hinton*, 220 Ga. App. 23, 25 (1) (467 SE2d 596) (1996). But, under Mack's approach, GAP would realistically be deprived of any opportunity to make a good faith offer to avoid litigation brought by a putative class of unnamed, unidentified pledgors or sellers who purportedly felt aggrieved by some aspect of the pawnbroker transaction. The statute's terms are explicit, and the trial court followed them. The trial court was not at liberty to rewrite the statutory terms under the guise of construing them, nor are we. *White Cloud Charter v. DeKalb County Bd. of Tax Assessors*, 238 Ga. App. 805, 806 (1) (520 SE2d 708) (1999). Had the legislature intended

---

[2] Mack later filed a voluntary dismissal without prejudice of the federal claims. Mack never applied for class certification.

to ease the prerequisites for filing suit, it could have done, so. See *Glinton*, supra at 866.

2. Mack contends that the trial court erred in finding that his notice letter sent pursuant to OCGA § 44-12-131 (a) (7) (C) did not function to place GAP on notice as to the claims of a class of individuals. He argues that if the ante litem notice was sufficient as to his claim, as the trial court stated, then the notice should not have failed "with respect to all those that have the very same claim." He further asserts that the trial court, in essence, decided that claims under the Georgia Pawnshop Act cannot be brought for the benefit of a class of persons.

While Mack complains that requiring him to adhere to the notice and good faith offer requirements of OCGA § 44-12-131 (a) (7) (C) would mean that no class action could ever be brought against a pawnshop under this statute, we disagree. Once the class is certified and its members adequately identified under OCGA § 9-11-23, the trial court likely could fashion a method for notification under OCGA § 44-12-131 (a) (7) (C), whether by a mass mailing of the type often used in class actions or some other means. But we need not reach this issue, because Mack never sought or obtained class certification. The hypothetical difficulty raised by Mack is not before us, and we may not issue a hypothetical or advisory opinion. *Bd. of Natural Resources v. Duke Energy Sandersville*, 257 Ga. App. 815, 816 (572 SE2d 356) (2002).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur. Ruffin, P. J., disqualified.*

DECIDED JULY 10, 2003.

*Gerard J. Lupa*, for appellant.
*Smith, Gambrell & Russell, Stephen M. Forte, Thomas M. Barton, Samira Jones*, for appellees.