**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**August 16, 2017**

# In the Court of Appeals of Georgia

A17A0910. D'ANTIGNAC v. DEERE & COMPANY d/b/a JOHN
      DEERE COMMERCIAL PRODUCTS, INC.

ANDREWS, Judge.

This appeal arises from Veronica D'Antignac's suit against her employer,
Deere & Company d/b/a John Deere Commercial Products, Inc. ("John Deere") for
intentional infliction of emotional distress and negligent retention. The superior court
granted summary judgment to John Deere, finding that, inter alia, D'Antignac's
claims were barred by the doctrine of judicial estoppel because of her failure to
disclose these claims in a prior Chapter 13 bankruptcy case. We agree and affirm.

Summary judgment is proper when there is no genuine issue of material fact
and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We
review a grant or denial of summary judgment de novo and construe the evidence in

the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, the record shows that beginning in 2004, D'Antignac was employed at a John Deere factory in Grovetown as an assembly technician. On June 25, 2008, D'Antignac's co-worker Alfredo Renzi showed her a noose he had made and tried to place it around her neck. D'Antignac immediately reported the incident to a manager, and Renzi was terminated within hours. However, two days later, another "lasso-type noose rope" was sent down the assembly line to D'Antignac's work station. D'Antignac left work and remained out on disability until the end of June 2010.

Previously, in February 2005, D'Antignac and her then-husband had filed for Chapter 13 bankruptcy. In the bankruptcy petition, D'Antignac was required to disclose all personal property, including "[o]ther contingent and unliquidated claims of every nature[.]" A bankruptcy plan to repay D'Antignac's creditors was confirmed on August 8, 2005, but she was not discharged from bankruptcy until November 5, 2008. Thereafter, on February 5, 2009, the bankruptcy court issued a final decree, discharged the trustee, and closed D'Antignac's case. D'Antignac never listed her claims against John Deere as an asset in her bankruptcy filings.

Meanwhile, by August 2008, D'Antignac had obtained legal counsel to pursue her claims against John Deere. And on August 22, 2008, she filed an EEOC complaint. Between August and November 2008, D'Antignac, through counsel, communicated with John Deere about the possibility of settling the case before she filed suit. During these negotiations, she offered to settle her claims for $2,000,000.

On June 1, 2010, the EEOC issued a right-to-sue letter, and that month, D'Antignac filed a complaint in state court against John Deere and Renzi, asserting claims for intentional infliction of emotional distress, assault, aggravated assault, and negligent retention. And on August 31, 2010, D'Antignac also filed suit in federal court against John Deere and Renzi, alleging sexual and racial harassment in violation of Title VII of the Civil Rights Act of 1964.

In March 2012, in the federal case, John Deere moved for summary judgment, which the district court granted, finding that D'Antignac's federal claim was barred by judicial estoppel because she failed to disclose it during her bankruptcy proceedings. The federal district court also found that D'Antignac's unsecured creditors were paid only 38.5 percent of the amount of their respective claims. The 11th Circuit affirmed the district court decision, and the Supreme Court of the United States denied D'Antignac's petition for certiorari. *D'Antignac v. Deere & Co.*, 604

Fed. Appx. 875 (11th Cir. 2015), cert. denied (136 SCt 808, 193 LE2d 713) (2016). In June 2012, after John Deere filed its motion for summary judgment in federal court, D'Antignac moved to reopen her bankruptcy case, but the bankruptcy court denied her motion because more than five years had passed since she had filed for bankruptcy and the court could no longer modify her plan or provide for additional payments.

Thereafter in April 2014, D'Antignac dismissed without prejudice her first state court suit against John Deere. In October 2014, D'Antignac re-filed the instant suit against John Deere, setting forth claims for intentional infliction of emotional distress and negligent retention, and seeking general and punitive damages.[1] John Deere again filed a motion for summary judgment asserting that D'Antignac's claims for intentional infliction of emotional distress and negligent retention failed as a matter of law and were barred by res judicata and judicial estoppel. Following a hearing, the trial court granted summary judgment to John Deere, finding that D'Antignac's claims were barred by res judicata because the claims had already been adjudicated or could have been adjudicated in federal court. The trial court also found that, under

---

[1] Renzi was also named as a defendant, and D'Antignac set forth claims of intentional infliction of emotional distress, assault, and aggravated assault against him. Renzi is not a party to this appeal.

federal and state law, D'Antignac's claims were barred by judicial estoppel. Finally, the trial court determined that, even if her claims were not barred, they failed as a matter of law. Finding no just reason for delay, the trial court entered final judgment in favor of John Deere. D'Antignac appeals, contending that the trial court erred in granting summary judgment (1) on the basis of judicial estoppel, (2) on the basis of res judicata, (3) as to her claim for intentional infliction of emotional distress, and (4) as to her claim for negligent retention.

1. D'Antignac asserts that the trial court erred in granting summary judgment on the basis of judicial estoppel. We disagree.

(a) In her brief, D'Antignac enumerated four claims of error, as set forth above. However, in the argument section of her brief, she begins, not with any of her enumerated errors, but with an un-enumerated claim that no court (either federal or state) has had jurisdiction to consider John Deere's motions asserting judicial estoppel or enter judgment based on the doctrine of judicial estoppel because those motions and judgments violate the automatic stay of the bankruptcy case and are therefore void. But this Court "has jurisdiction to decide only those issues fairly raised by an enumeration of error[.]" *Coweta County v. Simmons*, 269 Ga. 694, 695 (507 SE2d 440) (1998); accord *Williams v. State*, 320 Ga. App. 831, 837 (5) n.23

5

(740 SE2d 766) (2013). Even if this issue was fairly raised by an enumeration of error, D'Antignac's argument is without merit. An automatic stay only continues until the bankruptcy case is closed, the case is dismissed, or the case is discharged, whichever occurs first. See 11 USC § 362 (c) (2); *Bullard v. Blue Hills Bank*, __ U. S. __ (II) (135 SCt 1686, 1693, 191 LE2d 621) (2015) (noting that "[d]ismissal lifts the automatic stay entered at the start of bankruptcy"). D'Antignac was discharged from bankruptcy in 2008. Because the stay was lifted in 2008, there was no stay to violate at the time that John Deere filed its motions for summary judgment or the courts granted the motions, as D'Antignac's suits were not even filed until 2010.

(b) D'Antignac also asserts that judicial estoppel does not apply because she had no continuing duty to notify the bankruptcy court of her claims against John Deere.

Since 1994, Georgia courts have applied the federal doctrine of judicial estoppel. See *Nat'l Bldg. Maintenance Specialists, Inc. v. Hayes*, 288 Ga. App. 25, 26 (653 SE2d 772) (2007). "The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Period Homes v. Wallick*, 275 Ga. 486, 488 (2) (569 SE2d 502) (2002). As our Supreme Court has explained: "The federal

6

doctrine of judicial estoppel precludes a party from asserting a position in one judicial proceeding after having successfully asserted a contrary position in a prior proceeding." Id.

> It is most commonly invoked to prevent bankruptcy debtors from concealing a possible cause of action, asserting the claim following the discharge of the bankruptcy and excluding resources from the bankruptcy estate that might have otherwise satisfied creditors.

Id.

Georgia courts have followed the United States Supreme Court in considering "three factors pertinent to the decision whether to apply the doctrine in a particular case":

> (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to accept the party's earlier position; . . . absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 766-67 (573 SE2d 58) (2002) (punctuation omitted); see also *New Hampshire v. Maine*, 532 U. S. 742, 750-51 (II) (121 SCt 1808, 149 LE2d 968) (2001).

We review a lower court's application of judicial estoppel for abuse of discretion. See *Klardie v. Klardie*, 287 Ga. 499, 502 (2) (697 SE2d 207) (2010); *Pew v. One Buckhead Loop Condo. Assn.*, 305 Ga. App. 456, 460 (1) (b) (700 SE2d 831) (2010).

D'Antignac contends that she has not taken a "clearly inconsistent" position because she had no duty to notify the bankruptcy court of her claims against John Deere, which arose after she filed for bankruptcy and after confirmation of her bankruptcy plan. However, as our Supreme Court has explained, a Chapter 13 debtor has a duty to include "all property acquired after the commencement of the bankruptcy proceeding . . . in an amended schedule of assets." *Period Homes, Ltd.*, 275 Ga. at 487-88 (1) (holding that, in contrast, "a debtor under Chapters 7 or 11 is under no *statutory* duty to amend its schedule of assets"); accord *Smalls v. Walker*, 243 Ga. App. 453, 455 (532 SE2d 420) (2000) ("[I]n a Chapter 13 bankruptcy, the bankruptcy estate includes all property acquired by a debtor even *during* the bankruptcy proceeding.").

8

And "under the established law of [the 11th C]ircuit, a Chapter 13 debtor has a statutory duty to disclose changes in assets." *Robinson v. Tyson Foods, Inc.*, 595 F3d 1269, 1274 (III) (A) (11th Cir. 2010) (applying judicial-estoppel bar to debtor's employment discrimination claim that arose post-confirmation, but prior to discharge from bankruptcy); accord *In re Waldron*, 536 F3d 1239, 1243 (III) (A) (11th Cir. 2008) (holding that assets acquired after confirmation of a Chapter 13 plan are property of the bankruptcy estate); *Ajaka v. Brooksamerica Mtg. Corp.*, 453 F3d 1339, 1344 (11th Cir. 2006) (noting that a Chapter 13 debtor "must disclose all assets, or potential assets, to the bankruptcy court[,]" and "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court"); *Burnes v. Pemco Aeroplex, Inc.*, 291 F3d 1282, 1286 (III) (A) (11th Cir. 2002) ("A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change.") (citations omitted). See also *Bobick v. Community & Southern Bank*, 321 Ga. App. 855, 861 (3) n.5 (743 SE2d 518) (2013) ("The decisions of the United States Court of Appeals for

the Eleventh Circuit are not binding on this Court, even on questions of federal law, but they are persuasive authority.").

Despite these authorities, D'Antignac insists that she had no "freestanding" duty to disclose to the bankruptcy court her claims against John Deere because they accrued after her Chapter 13 plan was confirmed. She also argues that post-confirmation claims do not become property of the bankruptcy estate. But these arguments are foreclosed by *Waldron*. There, the 11th Circuit specifically considered "whether a debtor's claims for legal relief that arose after the confirmation but before the completion of his plan to pay creditors are property of the estate, under Chapter 13 of the Bankruptcy Code[.]" *Waldron*, 536 F3d at 1240. Considering the bankruptcy statutory scheme, the court held that based on the "plain language" of 11 USC § 1306 (a), a Chapter 13 debtor's post-confirmation claims are property of the estate because the claims were acquired "after the commencement of the . . . bankruptcy case but before [the] case was dismissed, closed, or converted." Id. at 1242 (III) (A).

Nonetheless, D'Antignac relies on *Waldron*, which she asserts supports her position. Specifically, she points to the court's statement: "We do not hold that a debtor has a free-standing duty to disclose the acquisition of any property interest

after the confirmation of his plan under Chapter 13." Id. at 1246 (III) (B). However, D'Antignac takes this quote out of context and ignores the holding in *Waldron*.[2]

Finally, D'Antignac argues that the 11th Circuit has granted rehearing en banc to considering the application of its doctrine of judicial estoppel to a Chapter 7 debtor in *Slater v. U. S. Steel Corp.*, 820 F3d 1193 (11th Cir. 2016), reh'g en banc granted, opinion vacated (Aug. 30, 2016). But even assuming the 11th Circuit were to reconsider its doctrine to D'Antignac's benefit, Georgia law also provides for a continuing duty to disclose assets or potential assets acquired during Chapter 13 bankruptcy proceedings. See *Period Homes, Ltd.*, 275 Ga. at 487-88 (1).

Here, it is undisputed that D'Antignac had acquired her claims by August 2008. D'Antignac was not discharged from bankruptcy until November 2008; and the bankruptcy case was not closed until 2009. Given the Georgia and 11th Circuit authority that a Chapter 13 debtor has a continuing duty to disclose a claim arising after confirmation during Chapter 13 bankruptcy proceedings, we conclude the trial

---

[2] In considering the debtor's argument that "a duty to disclose assets acquired after confirmation unduly burdens Chapter 13 debtors[,]" who would then be required to "to amend their schedule of assets to disclose their wages, weekly groceries, or every tank of gasoline as new assets," the court explained that it did not "hold that a debtor has a free-standing duty to disclose the acquisition of *any property interest* . . ." Id. at 1245-46 (III) (B) (punctuation omitted; emphasis supplied).

11

court did not abuse its discretion in finding that judicial estoppel barred D'Antignac's claims and, thus, did not err in granting summary judgment to John Deere on this basis. See *Period Homes, Ltd.*, 275 Ga. at 487-88 (1) (noting that a Chapter 13 debtor has a duty to include "all property acquired after the commencement of the bankruptcy proceeding . . . in an amended schedule of assets"); accord *Robinson*, 595 F3d at 1274-75 (III) (A) (applying judicial-estoppel bar to debtor's employment discrimination claim that arose post-confirmation, but prior to discharge from bankruptcy); see *In re Waldron*, 536 F3d at 1242 (III) (A) (holding that Chapter 13 debtor's claim for underinsured-motorist benefits were property of the bankruptcy estate because, although claim arose after commencement of bankruptcy, it arose before case was dismissed, closed or converted); *Ajaka*, 453 F3d at 1342-44 (applying a continuing duty to disclose a claim under the Truth in Lending Act that debtor first became aware of after confirmation of his Chapter 13 plan). But see *Chicon v. Carter*, 258 Ga. App. 164, 164 (573 SE2d 413) (2002) (refusing to apply judicial estoppel to bar Chapter 13 debtor's claim where the injury arose "after confirmation of a plan providing for payment in full of all creditors, and the debtors were discharged after successfully completing their plan").

2. Because D'Antignac's claims are barred by judicial estoppel, we need not consider her remaining arguments.

*Judgment affirmed. Ellington, P. J., and Rickman, J., concur*.