**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 2, 2019**

# In the Court of Appeals of Georgia

A19A0173. WARD-POAG v. FULTON COUNTY.

HODGES, Judge.

In this appeal, we must decide whether Sandra Ward-Poag's failure to disclose a whistleblower claim[1] against Fulton County in her petition for Chapter 13 bankruptcy until after the County moved for summary judgment in the whistleblower action precludes her claim under the doctrine of judicial estoppel. The Superior Court of Fulton County granted the County's summary judgment motion, finding that Ward-Poag was "judicially estopped from proceeding in [her] case" because her failure to disclose the claim was "intended to deceive her creditors[] and that her behavior has made a mockery of both this Court and the Bankruptcy Court." Ward-Poag appeals, arguing that the trial court erred because (1) her positions in the bankruptcy court and

---

[1] See OCGA § 45-1-4.

the trial court were not inconsistent, introduced no risk of inconsistent results, and did not threaten judicial integrity in view of her amended bankruptcy schedule disclosing her claim against the County; and (2) genuine issues of material fact remained concerning the County's argument that she intended to make a mockery of the judicial system. For the following reasons, we reverse.

Under Georgia law,

> [s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Kamara v. Henson*, 340 Ga. App. 111 (796 SE2d 496) (2017). So viewed, the record reveals that the County hired Ward-Poag as the entertainment manager for the Wolf Creek Amphitheater in 2012.[2] In May 2013,

---

[2] We note that Ward-Poag has not cited to the record on appeal in the format required by our rules. See Court of Appeals Rule 25 (c) (2) (iii) ("Reference to the record should be indicated by specific volume or part of the record and by (R-Page Number of the Record). Reference to the transcript should be indicated by specific volume or part of the transcript and by (T-Page Number of the Transcript)."). Instead, it appears Ward-Poag simply cited to the index numbers prepared by the trial court clerk, with no citations to page numbers for each indexed item. But see *Davis v.*

Ward-Poag filed a voluntary petition for Chapter 13 bankruptcy, which was confirmed in March 2014 and required a payment plan that would conclude in March 2019.[3]

While her bankruptcy petition was pending, Ward-Poag alleged numerous instances from September 2015 to August 2016 in which a Fulton County

---

*Wallace*, 310 Ga. App. 340, 341, n. 1 (713 SE2d 446) (2011) ("there is no need to reference the trial court's index numbers unless, for some reason, there is no other way to identify a citation"). Finally, many of the citations included in Ward-Poag's brief are incorrect; for example, citations to "R. 241, Exh. 4," purportedly to her Chapter 13 plan, are actually to the deposition of Lisa Rushin.

This is particularly problematic in a record spanning several thousand pages, because "it is not the function of this court to cull the record on behalf of a party in search of instances of error." (Citation omitted.) *Adamson v. General Elec. Co.*, 303 Ga. App. 741, 742 (1) (694 SE2d 363) (2010). Rather, "[t]he burden is upon the party alleging error to show it affirmatively in the record[, and] [i]t is a disservice to the client to not follow the rules of this Court which are designed to facilitate review." (Citations omitted.) Id. at 742-743 (1). We further remind the bar that the failure to prepare a brief in conformity with our rules could subject the offending party to contempt. See Court of Appeals Rule 7 (c). Nevertheless, despite these deficiencies, we will attempt to review Ward-Poag's arguments.

[3] Ward-Poag's statement that she "repaid all of her creditors and received a discharge from bankruptcy . . . on April 16, 2018" is not supported by a valid citation to the record. See Court of Appeals Rule 25 (a) (1) ("Record and transcript citations shall be to the volume or part of the record or transcript and the page numbers that appear on the appellate record or transcript as sent from the trial court."). Furthermore, we will not cull the voluminous record on Ward-Poag's behalf in search of a citation to support her claim.

commissioner attempted to use the amphitheater for his private gain, including repeated demands for dates to promote his own concerts. Ward-Poag rejected the commissioner's requests and, as a result, she alleged that she was demoted and faced other forms of retaliation by the commissioner.[4] In August 2016, Ward-Poag sent ante litem notice of her whistleblower claim to the County. Thereafter, she filed the action at issue in this appeal in October 2016.[5]

On September 5, 2017, the County filed a motion for summary judgment, arguing, inter alia, that judicial estoppel barred Ward-Poag's claim because she failed to disclose her cause of action against the County as an asset in her bankruptcy proceeding.[6] Thereafter, Ward-Poag filed an amended bankruptcy schedule on October 2, 2017, in which she identified her cause of action against the County as an

---

[4] Linda Rushin, the executive manager of the amphitheater, alleged similar contact and is Ward-Poag's co-plaintiff. However, Rushin is not a party to this appeal.

[5] The County terminated Ward-Poag's employment on or about February 3, 2017.

[6] It is undisputed that Ward-Poag did not disclose her claim against the County, which allegedly arose as early as September 2015, in her bankruptcy proceeding at any point prior to the County's motion for summary judgment.

asset; the value listed for the claim was $1.00.[7] The trial court held a hearing on the County's motion on October 17, 2017, and orally granted the County's motion. Following additional briefing by the parties, the trial court entered a written order granting the County's motion on May 22, 2018 in which it relied upon *Slater v. U. S. Steel Corp.*, 871 F3d 1174 (11th Cir. 2017) and concluded that Ward-Poag "intended to deceive her creditors[] and that her behavior has made a mockery of both this Court and the Bankruptcy Court." This appeal followed.

1. Ward-Poag first argues that the trial court erred in granting the County's motion for summary judgment because her positions in the bankruptcy court and the trial court were not inconsistent, introduced no risk of inconsistent results, and did not threaten judicial integrity given her amended bankruptcy schedule disclosing her claim against the County. We agree.

Generally, Georgia courts follow the federal doctrine of judicial estoppel. See *Nat. Bldg. Maintenance Specialists v. Hayes*, 288 Ga. App. 25, 26 (653 SE2d 772)

---

[7] In contrast, Ward-Poag's amended complaint alleged damages "in the minimum amount of $1,500,000[.]" Although the amended petition is attached as an exhibit to an affidavit filed after the trial court's hearing on the County's motion for summary judgment, the County does not contest that Ward-Poag filed such an amendment. Similarly, the trial court acknowledged that Ward-Poag filed the amendment.

(2007). "Under the doctrine, a party is precluded from asserting a position in a judicial proceeding which is inconsistent with a position *previously successfully asserted* by it in a prior proceeding." (Emphasis supplied.) Id.

> The essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. The doctrine is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is designed to prevent parties from making a mockery of justice through inconsistent pleadings.

(Citation omitted.) *Kamara*, supra, 340 Ga. App. at 112 (1); accord *Johnson v. Trust Co. Bank*, 223 Ga. App. 650, 651 (478 SE2d 629) (1996).

> Accordingly,

> the doctrine is commonly applied to preclude a bankruptcy debtor from pursuing a damages claim that [she] failed to include in [her] assets in the bankruptcy petition because a failure to reveal assets, including unliquidated tort claims, operates as a denial that such assets exist, deprives the bankruptcy court of the full information it needs to evaluate and rule upon a bankruptcy petition, and deprives creditors of resources that may satisfy unpaid obligations.

6

(Citations and punctuation omitted.) *Nat. Bldg.*, supra, 288 Ga. App. at 26. Relevant to Ward-Poag,

> [a] Chapter 13 debtor's interest in a cause of action, including an unliquidated tort claim, is personal property included as part of the bankrupt estate. Unlike a Chapter 7 or 11 debtor, a Chapter 13 debtor has a statutory duty to amend [her] schedule of assets to include property, such as a tort claim, that should have been listed initially or was acquired after the bankruptcy petition was filed.

(Citations omitted.) Id. at 26; see also *D'Antignac v. Deere & Co.*, 342 Ga. App. 771, 775 (1) (b) (804 SE2d 688) (2017) ("a Chapter 13 debtor's post-confirmation claims are property of the estate because the claims were acquired after the commencement of the bankruptcy case but before the case was dismissed, closed, or converted") (citation and punctuation omitted).

To that end, "*Georgia* law . . . provides for a continuing duty to disclose assets or potential assets acquired during Chapter 13 bankruptcy proceedings." (Emphasis supplied.) *D'Antignac*, supra, 342 Ga. App. at 776 (1) (b). As a result, we have held that "if the debtor initially fails to list the claim as a potential asset but later amends the bankruptcy filing or moves to reopen the bankruptcy proceeding to include the

7

claim, judicial estoppel will not bar a later recovery on the claim."[8] (Citations omitted.) *Smalls v. Walker*, 243 Ga. App. 453, 456 (2) (532 SE2d 420) (2000); accord *Nat. Bldg.*, supra, 288 Ga. App. at 27. "We review a lower court's application of judicial estoppel for abuse of discretion." *D'Antignac*, supra, 342 Ga. App. at 774 (1) (b).

In *Nat. Bldg.*, the plaintiff's cause of action arose before she filed her Chapter 13 bankruptcy petition. 288 Ga. App. at 25. The plaintiff failed to amend her bankruptcy petition to identify her claim both initially and after the defendant filed a motion to dismiss her claim. Id. at 25, 27. However, the plaintiff filed an application in the bankruptcy court to employ counsel to pursue her cause of action, thereby providing notice of her claim to her creditors. Id. at 27. As a result, we concluded that the plaintiff "did not mislead the bankruptcy court or gain an unfair advantage by

---

[8] For this reason, we need not address the County's argument of whether *New Hampshire v. Maine*, 532 U. S. 742 (121 SCt 1808, 149 LE2d 968) (2001) or *Slater*, supra, 871 F3d at 1174, controls, for *Georgia* law imposes a "continuing duty to disclose assets or potential assets acquired during Chapter 13 bankruptcy proceedings." (Emphasis supplied.) *D'Antignac*, supra, 342 Ga. App. at 776 (1) (b). In other words, our relevant inquiry is whether the debtor amended her Chapter 13 bankruptcy petition, before discharge or some other resolution of the bankruptcy proceeding, to include a claim that arose after the original bankruptcy petition was filed. See id. at 775-776 (1) (b); see also *Kamara*, supra, 340 Ga. App. at 112-113 (1); *Johnson*, supra, 223 Ga. App. at 651. The trial court erred in exceeding this limited inquiry.

8

nondisclosure as her recovery on the personal injury claim will inure to the benefit of her bankruptcy estate, and in turn, to her creditors." Id.

In this case, Ward-Poag filed a voluntary petition for Chapter 13 bankruptcy in May 2013. She alleged that her causes of action against the County arose, at the earliest, in September 2015, and she filed suit against the County in October 2016. At that time, her bankruptcy proceeding had not been discharged, dismissed, or otherwise adjudicated. Following the County's motion for summary judgment on the issue of judicial estoppel, Ward-Poag amended her bankruptcy petition to disclose her cause of action against the County.[9] Although the County's concern with the timing of Ward-Poag's amendment is not unfounded, our precedent does not punish a litigant for amending her pending bankruptcy petition, after the filing of a dispositive motion rooted in judicial estoppel, to disclose a cause of action that ripened after the original bankruptcy petition was filed.[10] See *Period Homes v. Wallick*, 275 Ga. 486,

_____

[9] Unlike in *Nat. Bldg.*, then, Ward-Poag's creditors did not need to speculate on the nature of a tort claim because Ward-Poag amended her bankruptcy petition to disclose her pending action against the County.

[10] Nor has the County identified any Georgia precedent that would contradict this principle by requiring a more precise estimated value of an unliquidated cause of action. *Dugger v. Smith & Nephew, Inc.*, No. 1:12-CV-2528-ODE, 2013 U.S. Dist. LEXIS 191729 at *5 - *6 (N.D. Ga. Mar. 20, 2013), while persuasive, is not controlling and does not consider Georgia law freely allowing amendments to

9

488 (2) (569 SE2d 502) (2002) (judicial estoppel "most commonly invoked to prevent bankruptcy debtors from concealing a possible cause of action, asserting the claim following the discharge of the bankruptcy and excluding resources from the bankruptcy estate that might have otherwise satisfied creditors"). To the contrary,

> [w]here a plaintiff, who initially fails to list a claim in her bankruptcy petition, successfully amends her asset schedules to include that claim, *it cannot be said as a matter of law* that the plaintiff intentionally attempted to manipulate and deceive the court system, or that she was attempting to make a mockery of the system through inconsistent pleading. Moreover, where the plaintiff amends her bankruptcy asset schedules, this Court cannot say that the plaintiff's present position is inconsistent with one that she *successfully asserted* in a prior proceeding.[11]

---

bankruptcy petitions. See *D'Antignac*, supra, 342 Ga. App. at 776 (1) (b); *Kamara*, supra, 340 Ga. App. at 112-113 (1); *Johnson*, supra, 223 Ga. App. at 651. Similarly, *Harper v. GMAC Mortgage Co.* is distinguishable since the plaintiff in that case failed to disclose the existence of a damages claim at all, rather than amending a bankruptcy petition to disclose an unliquidated cause of action. 245 Ga. App. 729, 732 (1) (538 SE2d 816) (2000).

[11] Of particular relevance, there has been no showing that Ward-Poag "successfully asserted" inconsistent positions. See *Kamara*, supra, 340 Ga. App. at 112-113 (1).

(Citations and punctuation omitted; emphasis supplied.) *Kamara*, supra, 340 Ga. App. at 112-113 (1); see also *Nat. Bldg.*, supra, 288 Ga. App. at 27-28.[12]

Therefore, we conclude that judicial estoppel does not bar Ward-Poag's claims. As a result, in view of controlling authorities to the contrary,[13] we conclude that the trial court abused its discretion in applying judicial estoppel to bar Ward-Poag's

---

[12] As a result, we need not consider the conflict in the affidavit testimony between Ward-Poag's bankruptcy counsel and a Chapter 13 bankruptcy trustee concerning the adequacy of Ward-Poag's amendment to her bankruptcy petition. But see, e.g., *Nall v. Bill Heard Chevrolet Co.*, 238 Ga. App. 365, 366-367 (518 SE2d 164) (1999) ("An affidavit made in opposition to a motion for summary judgment not served at least one day before the hearing is barred by the Civil Practice Act from consideration as evidence unless the record discloses the trial court, in the exercise of its discretion, has allowed the affidavit to be served and considered.") (citations omitted).

[13] See, e.g., *White Cloud Charter v. DeKalb County Bd. of Tax Assessors*, 238 Ga. App. 805, 807 (2) (520 SE2d 708) (1999) ("In light of the express terms of [the controlling statute] and in the absence of applicable authority to the contrary, we cannot say that the trial court abused its discretion . . .").

claim.[14] It follows that the trial court erred in granting the County's motion for summary judgment, and we therefore reverse.[15]

2. In view of our discussion in Division 1, supra, we need not consider Ward-Poag's remaining argument.

*Judgment reversed. Dillard, P. J., and Gobeil, J., concur.*

---

[14] *D'Antignac* does not require a different result. In *D'Antignac*, the plaintiff failed to disclose her cause of action prior to the discharge of her Chapter 13 bankruptcy proceeding. 342 Ga. App. at 771. Following discharge, she moved to reopen her bankruptcy to list the claim as an asset, but the bankruptcy court denied her motion. Id. at 772. As a result, we concluded that judicial estoppel barred the plaintiff's claims. Id. at 776 (1) (b). Unlike the plaintiff in *D'Antignac*, Ward-Poag's cause of action accrued *after* she filed her bankruptcy petition, and she amended her petition to include her claim against the County *before* her bankruptcy was discharged.

[15] Although the County advanced multiple additional arguments in support of its motion for summary judgment, the trial court based its decision only upon judicial estoppel. Upon the return of the remittitur, the trial court may consider any remaining arguments for summary judgment.